594 A.2d 316

**STATE FARM INSURANCE COMPANIES, Bethel Park Service Center 88 Fort Couch Road Pittsburgh PA 15241**

v.

**Betty Ann SWANTNER 59 Second Street Extension Donora, PA 15033, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 1991.

Filed July 3, 1991.

236

J. Lawrence Hajduk, Uniontown, for appellant.

Stephen P. McCloskey, Washington, for appellee.

Before ROWLEY, President Judge, and CAVANAUGH, CIRILLO, OLSZEWSKI, MONTEMURO, BECK, TAMILIA, POPOVICH and HUDOCK, JJ.

TAMILIA, Judge:

■ This is an appeal from an Order compelling appellant, Betty Ann Swantner (Swantner) to submit to an independent medical examination as requested by appellee, State Farm Insurance Companies (State Farm). The Order was entered following the trial court's finding of good cause shown in State Farm's Petition to Compel Independent Medical Examination pursuant to the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1796(a), Mental or physical examination of person.[1]

Appellant was injured in a motor vehicle accident on December 7, 1988. Shortly thereafter, she began a course of medical treatment including hydrotherapy, ultrasound and massage for a cervical/lumbosacral sprain allegedly sustained in the accident. The treatments, by Dr. Doyle Tarwater, were administered three times per week and

1. An Order granting or denying a petition to compel an independent medical examination pursuant to section 1796(a) of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1796(a), is a final, appealable one. *State Farm Insurance Cos. v. Hunt,* 390 Pa.Super. 620, 569 A.2d 365 (1990); *State Farm Mutual Automobile Ins. Co. v. Zachary,* 370 Pa.Super. 386, 536 A.2d 800 (1987); *Keystone Insurance Co. v. Caputo,* 365 Pa.Super. 431, 529 A.2d 1134 (1987).

continued through late June, 1989. Bills totalling approximately $4,000 were submitted to appellee, State Farm, who was responsible for paying insurance benefits as a result of the accident. The bills were paid until May 5, 1989.

Dr. Tarwater's reports provided to State Farm indicated that as early as the end of December, 1988, and early January, 1989, appellant was feeling pretty well, and by April, 1989, appellant was fine except for a cold. Dr. Tarwater also reported on February 14, 1989, that he did not know at that time whether the injury would be permanent.

On March 24, 1989, State Farm requested appellant to submit to an independent medical exam because it had substantial doubt as to the necessity of the treatments being given. In addition, State Farm submitted Dr. Tarwater's reports to a peer review evaluation. The May 25, 1989 report from the peer review evaluation indicated that although it had been six months since the injury, the nature and extent of the treatments being given had not changed. In addition, the soft-tissue type injuries sustained would typically have shown complete relief after one or two months of treatment. Also, the frequency of the treatments ordinarily would have been reduced in accord with the patient's indications that she was feeling better.

On June 14, 1989, the peer review report was brought to the attention of appellant's counsel, and again an independent medical exam was requested. The letter also notified appellant that based on the peer review results, it was making its final payment to Dr. Tarwater for treatment rendered through May 5, 1989. A third request for a medical exam was made on July 13, 1989, and in an August 30, 1989 letter, counsel for State Farm asked Dr. Tarwater to supplement his previously forwarded documentation to address some specific concerns. Also, on August 30, 1989, State Farm again requested that an independent medical exam be given. When no response was forthcoming, State Farm, on October 5, 1989, prepared a petition to compel

independent medical examination, pursuant to 75 Pa.C.S. § 1796.[2] On October 20, 1989, the petition was presented to the trial court, along with an answer and new matter to the petition. The same day, the trial court entered an Order granting the petition and compelling the medical examination. This appeal from the October 20, 1989 Order followed. This Court, en banc, accepted the appeal for resolution of appellant's arguments in light of the following consideration: Is there a conflict regarding the standards to be applied by the trial court in reviewing a motion to compel physical examination as set forth in *State Farm Mutual Automobile Insurance Company v. Zachary*, 370 Pa.Super. 386, 536 A.2d 800 (1987), and *State Farm Insurance Companies v. Hunt*, 390 Pa.Super. 620, 569 A.2d 365 (1990), and if so, how should it be resolved?

Appellant appeals from the Order compelling her submission to an independent physical examination on the basis that State Farm failed to meet the three-pronged good cause test for the examination as set forth in *Zachary, supra*. Swantner asserts the allegations of State Farm's petition lack specificity, that the physical examination is sought in bad faith, that State Farm failed to utilize the less intrusive means of taking depositions of her and her attending physician, that State Farm improperly employed a peer review procedure in assessing her claim for payment for medical treatment and that the trial court erred in disposing of the petition on its allegations, alone, without utilizing the procedure set forth in Pa.R.C.P. 209, Duty of Petitioner to Proceed After Answer Filed. After a review of the applicable case law, we affirm the Order in question.

The standards for determining whether there is good cause, under 75 Pa.C.S. § 1796, for a court to order an

2. Although State Farm in its petition and on appeal asserts no response was received to its request for the physical examination, appellant, in her answer to the petition and on appeal, avers her counsel telephoned State Farm adjuster Barbara Rubenstein and indicated no independent medical examination would be authorized.

independent medical examination has been set forth in the *Zachary* and *Hunt* cases as follows:

In *Zachary*, this Court stated:

"it is mandatory that the averments contained within a petition to compel a medical examination must rise to a level of specificity so as to ensure that a claimant will not be forced to submit to unnecessary examinations sought in bad faith. Accordingly, such petitions must illustrate a need, rather than a mere desire, for an independent medical examination."

Further, quoting *Nationwide Mutual Insurance Co. v. Fandray*, 12 D. & C.3d 65, 70, 128 P.L.J. 63 (1979), the Court adopted the following three point test:

[T]o establish 'good cause shown', an insurer's petition, at the minimum, must contain facts showing [1] that the proofs supplied in support of the claim are inadequate, [2] that the proposed physical examination will substantially assist the insurer in evaluating the claim and [3] that the amount of the claim justifies a court order compelling the claimant to submit to a physical examination.

*Zachary*, supra, 370 Pa.Superior Ct. at 390, 536 A.2d at 801. This holding was followed by our Court in *State Farm Mutual Auto Insurance Company v. Allen*, 375 Pa.Super. 319, 544 A.2d 491 (1988). In a Concurring and Dissenting Opinion by Judge Wieand, however, he stated he was "specifically in disagreement with the majority's approval of the unnecessarily stringent three-element test for determining 'good cause'" adopted in *Zachary*. *Id.*, 375 Pa.Superior Ct. at 326, 544 A.2d at 494. In his dissent, Judge Wieand proposed a two part component test for establishing the requirement of good cause. It is this two part test which Judge Wieand later set forth in his majority Opinion in *Hunt* creating the conflict which caused this case to be submitted to the Court en banc.

In *Hunt*, our Court said:

"Before ordering a party to submit to an examination, however, a trial court should require a showing that a bona fide controversy exists regarding the nature of the claimant's injuries. It must also be shown that the re-

quested mental or physical examination will substantially aid the insurer in evaluating the claim."

*Id.,* 390 Pa.Superior Ct. at 367, 569 A.2d at 367.

To return to the beginning in our evaluation, the Vehicle Code provides as follows:

Mental or physical examination of person

(a) General rule.—Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa.C.S. § 1796.

The central issue in this case is the requirement that the Order be "for *good cause shown.*" As noted above, "for good cause shown" has been subject to judicial interpretation in conflicting manners requiring resolution by the Court en banc, which may be done de novo.

■ At the outset, it must be stated section 1796 does not provide a guideline and it must be liberally construed to effect the legislative objects and to promote justice. *See* 1 Pa.C.S. § 1928, Rule of strict and liberal construction. Guidelines sometimes aid in interpretation and expedite resolution of difficult legal and factual issues, but where they tend to deny the remedy or confuse the application of the statutory provision, they defeat their purpose. This is the point which produced the conflict between the panels of this Court in *Zachary* and *Hunt. Zachary* would apply stringent and restrictive standards of proof to permit grant

of a petition for medical examination while *Hunt* would require no restrictions beyond existence of a conflict and necessity of the examination to aid the insurer to establish the claim.

Reviewing both tests, we believe *Hunt* comes closer to providing the elements necessary to fulfill the legislative intent within the rule of liberal construction, but we question the necessity of any test consisting of enumerated prerequisites. The central element of section 1796 at issue here, "[t]he order may only be made upon motion for good cause shown," requires only that it be made upon motion and for good cause shown. Here, the trial court did not detail any enumeration of factors considered in granting the order for medical examination. If we are bound by our self-imposed restrictions, pursuant to *Zachary* or *Hunt,* in light of our numerous holdings in cases where this Court has imposed tests or guides, this case was subject to remand to have the court explain how its decision was arrived at in light of the judicially created standards. If we adhere to *Zachary* or *Hunt* but do not require the trial court to do so, we are faced with a self-imposed appellate rule which requires more of this Court in review than of the trial court in the first instance and places the various trial courts in a position where they have little guidance as to the manner in which we ultimately resolve this issue. If, however, we determine such standards to be unnecessary, a remand is not required. However, by stating simply that he determined the Order for medical examination to be justified for good cause shown, we are required to review the record, consisting of motions, affidavits, briefs and other materials reviewed by the trial court, to determine if the trial court abused his discretion.

Abuse of discretion in respect to the term good cause shown (for requested medical examination) is not so difficult a concept that detailed and restrictive provisions must be engrafted upon the statute to protect the litigants from judicial error. We sometimes become enamored with tests, steps and guidelines to the point where they interfere

with the judicial function. Looking to the definition of "good cause shown," Black's Law Dictionary, 5th Edition, defines it as "substantial reason, one that affords a legal excuse, phrase "good cause" depends upon circumstances of individual case, and *finding of its existence lies largely in discretion of officer or court to which decision is committed. Wilson v. Morris*, Mo., 369 S.W.2d 402, 407 [1963]." (Emphasis added.) Mere desire on part of attorney to know what his adversaries believe, or mere desire to change a condition, is not itself good cause. *Words and Phrases*, "Good Cause," pp. 28–29.

It may be helpful to evaluate section 1796 and its purpose as it compares with rules of deposition and discovery, specifically Pa.R.C.P. 4010, Physical and Mental Examination of Persons, which provides:

> 1) When the mental or physical condition (including blood group) of a party ... is in controversy, the court ... may order the party to submit to a physical or mental examination by a physician.... The order may be made only on motion for good cause shown....

Rule 4010, which predated section 1796 of the Vehicle Code, differs only in that it applies to a pending action as opposed to a claim for medical income loss or catastrophic loss benefits, and the rule requires that a *controversy* exists, whereas section 1796 merely provides the mental or physical condition is *material* to a claim. The provision of "good cause shown" is identical in both. The terms "in controversy" and "material to any claim" cannot be read interchangeably. "In controversy" is read

> "more broadly, to include any action in which the condition will be a material issue, although no personal injuries are claimed....
>
> If the phrase "in controversy" is ambiguous, and capable of the two meanings which the federal cases have suggested, the history of physical examination in Pennsylvania makes it clear that the broader meaning is intended.[92]"

92. In *Meyers v. Travelers Ins. Co.*, 353 Pa. 523, 46 A.2d 224, 163 ALR 919 (1946), the Supreme Court adopted Wigmore's view that "the duty to bear witness to the truth ... includes ... the duty to exhibit the physical body, so far as the ascertainment of the truth requires it." This is a very broad standard.

Goodrich–Amram 2d § 4010(a):4, p. 266.

"Material to the claim," as contained in section 1796, limits the examination to those instances where the information is essential to confirm the need to pay or continue payment of the claim. Under Rule 4010, a controversy exists by virtue of a pending action in which the physical or mental condition of a party is at issue. As stated in Goodrich–Amram, this could arise in the course of an estate action, libel suit or paternity action. Under section 1796 of the Vehicle Code, the physical or mental condition material to a claim is specifically associated with the injury giving rise to the claim. In both the rule and the statutory section, the term "for good cause shown" relates to the need to know in conjunction with the relative facts of the case. This provision is generally understood to protect the parties against undue invasion of their rights to privacy. *See* Pa.R.C.P. 4010, Explanatory note (2) 1978); Goodrich Amram, Deposition and Discovery § 4010(a):4 Nt. 91.

In comparing the two similar but not identical provisions, we conclude section 1796 does not require a "controversy" as does Rule 4010, and "material to a claim" entails a more focused inquiry as to entitlement to payment. "For good cause shown," therefore, does not relate to the existence of a controversy but to the continued necessity for treatment and requirement of payment. Thus the motion may arise out of a lack of knowledge rather than a controversy, and it is up to the trial court to determine whether, on the basis of information supplied, a medical examination is warranted to ascertain the needed information. This returns us to our earlier discussion. The motion will not be granted solely because there is a controversy or a desire to know. The appellant's contention that the court erred in failing, first, to schedule arguments on disputed allegations or in the alternative to proceed under Rule 209

to take depositions is, therefore, without merit. Appellant alleges the court entered the Order granting the motion for examination without depositions being taken or scheduling oral arguments immediately following the filing of the answer to the motion. The justification for entering the Order without pursuing the procedure established by Rule 209 is that the record was clear from the pleadings and affidavits that depositions or arguments were unnecessary to a resolution of the motion, even if a controversy existed. From the pleadings and affidavits, the court was able to ascertain that the present physical condition was material to the claim. It was also evident that all reasonable non-intrusive means had been pursued to establish the justification or lack of it for continued payment. On the basis of the prior contacts and inquiries and by means of peer review, appellee was able to establish good cause for a medical examination and the matter was beyond the point where depositions or oral argument would aid in the resolution of that issue. When the burden of providing proof of good cause has been met, it is unnecessary to take depositions or proceed with oral argument. In this respect, *Hunt* is correct. Appellant's argument that peer review was improperly employed by the insurer is an argument without legal support. Peer review is a proven method of establishing appropriateness of the nature and extent of treatment and violates no private or legal right of appellee. The enactment of a mandatory peer review system in the MVFRL, 75 Pa.C.S. § 1797(b), Customary charges for treatment, shortly after this appeal was taken, testifies to its validity and efficacy.

Finally, we must determine whether the court erred in failing to follow either or both of the procedures detailed in *Zachary* and *Hunt* to establish "good cause shown" for ordering the medical examination. We believe, as stated earlier, the evidentiary requirements those cases espouse are not essential to such a finding. If the record supports the conclusion by the trial court that the medical

condition is material to the claim and the proof presented establishes good cause to evaluate that condition, nothing more is required by the statute. To return the matter to the trial court to state in his findings what we know to be supported by the record is a useless act. To require this Court to be bound by standards when we do not require the trial court to document its adherence to them is, as stated before, anomalous. Amount of the claim is not an issue and the medical proofs to support the claim, if inadequate, will necessarily be inherent in the insurer's showing of good cause and be considered by the court in conjunction with the totality of the record. Likewise, proof that a controversy exists, while likely to be inherent in any request for a medical examination, is not an essential element of proof as would be required by *Hunt.* In contradistinction to Rule 4010, which *requires* the existence of a condition in controversy, which is construed broadly for procedural purposes, under section 1796 no controversy is required as the only consideration is whether the medical condition is material to the claim. If the controversy in a pending action (Rule 4010) relates to the very existence of a medical condition, this entails a fundamental issue as to the validity of the cause of action, and absent proof the case may not proceed. Good cause to obtain an examination under those circumstances is more liberally available. Here, the good cause shown requirement is related solely to the medical condition as it is material to the claim regardless of a controversy that would be the focus of a cause of action. Such a claim may be made independent of any cause of action and is a separate, non-ancillary proceeding that may be invited by the MVFRL pursuant to section 1796. As stated in *Commonwealth v. Caputo*, 365 Pa.Super. 431, 529 A.2d 1134 (1987), mere allegations by an insurer, including the insured's substantial medical expenses, unsupported by the developed record, were insufficient cause to order a medical examination as allowed by this section. Conversely, mere denial of a motion for medical examination, in the face of

competent proof of its necessity, will not invoke further procedures to enhance the proof because of the existence of a "controversy."

█ If controversy becomes a key to grant or denial of a motion, the insurer may create a controversy simply by alleging lack of progress or extensive bills which it refuses to accept. Nor may the insured ignore reasonable limitations on treatment by continuing in treatment without validation or justification. Thus the entire focus must be on the condition which is material to the claim, and the trial court had discretion to ascertain whether good cause has been shown to permit the examination to evaluate that condition. The good cause requirement will prevent harassment, untoward intrusion and unwarranted examination when the proof presented does not meet the standard universally applied when good cause is implicated. Further classification of the standards required by *Zachary* and *Hunt* does not facilitate the required finding but restricts analysis and review when the trial court's discretion should be broad. In affirming the decision of the trial court, we find no abuse of discretion in failing to specifically apply the tests of *Zachary* and *Hunt* and in doing so reject the requirements they superimpose on section 1796.

Order affirmed.

BECK, J., concurs in the result.