674 A.2d 1095

John McGRATTON, Jr., Appellee,

v.

Melvina BURKE and Joseph Burke, Appellants.

Superior Court of Pennsylvania.

Argued Oct. 24, 1995.

Filed March 7, 1996.

Reargument Denied May 16, 1996.

Louis E. Bricklin, Philadelphia, for appellants.

Joanne Fishman, Philadelphia, for appellee.

Before McEWEN, SAYLOR and BROSKY, JJ.

McEWEN, Judge.

This appeal has been taken by Melvina and Joseph Burke (hereinafter appellants) from the judgment in the amount of $75,000.00 entered in favor of John McGratton, Jr. (hereinafter appellee), following a nonjury verdict in this action instituted by appellee as a result of an automobile accident involving the parties. We are constrained to vacate the judgment and remand.

Appellants contend that they are entitled to judgment n.o.v. or, in the alternative, a new trial, and frame their arguments in their brief as follows:

> The trial court erred in denying [appellants'] request for a medical examination of [appellee] merely because the request was made after an arbitration hearing, where the nature and extent of [appellee's] injuries were in dispute and the request was made several months prior to trial.

> The evidence presented at trial was insufficient to support the [trial] court's finding that the [appellee] had sustained a "serious injury," as defined by 75 Pa.C.S. § 1702.

> The evidence presented at trial was insufficient to support the [trial] court's finding that the [appellee] had sustained damages in the amount of $75,000.00 for pain, suffering and the loss of life's pleasures.

Appellee, who conceded that, on the date of the accident, October 10, 1991, he was subject to the limited tort verbal threshold provided by Section 1705(d) of the MVFRL, 75 Pa.C.S. § 1705(d), contended that he was entitled to recovery of noneconomic damages because he had sustained a "perma-

nent injury" to his back when the vehicle in which he was a passenger was struck in the rear by the automobile operated by appellant, Melvina Burke. Appellee, who was 20 years old at the time of the accident, presented himself at the emergency room of the Frankford Torresdale Hospital shortly after the accident and was examined, x-rayed, and released. Appellee, who alleged that he was bed-ridden for three days and unable to work for approximately one week following the accident, subsequently came under the care of Dr. Maurice Singer, an osteopathic physician, who prescribed muscle relaxants and physical therapy treatment. Appellee thereafter received physical therapy once a month for one year, during which time objective testing procedures[1] indicated that the symptoms appellee reported were related to muscle strain of the lower back. Appellee ceased the monthly physical therapy treatments in February of 1993.

The arbitration panel which heard the case on October 19, 1993, pursuant to 42 Pa.C.S. § 7361(a), restricted its award in favor of appellee to an economic loss in the amount of $2,893.95, because the majority of the members of the panel determined that appellee had not sustained a "serious injury" as defined by the Motor Vehicle Financial Responsibility Law, and, thus, was not eligible for recovery of any damages for pain and suffering.

When appellee filed a timely appeal to the Court of Common Pleas, appellants filed a motion to compel an independent medical examination (hereinafter "IME") of appellee. The motion was denied and the matter proceeded to trial on May 4, 1994, before the distinguished Judge G. Craig Lord, sitting without a jury, who found that appellee had suffered a "serious injury" for purposes of the MVFRL, and, therefore, awarded noneconomic damages to appellee in the amount of $75,000. After the trial court denied the post-trial motions of

1. Murray Dalinka, M.D., evaluated an MRI performed on March 7, 1992, and concluded that it revealed a normal lumbar spine, while Bong S. Lee, M.D., advised appellee's treating physician that the MRI showed "no evidence of any discogenic disease" and that the "problem appears to mostly of soft tissue...."

appellants, judgment was entered in favor of appellee in the amount of $75,167.36.[2]

■ Appellants contend that the trial court erred in failing to find that their motion to compel appellee to appear for an independent medical examination was improperly denied. While we maintain an abundant respect for the jurisprudential scholarship of the trial court, we are constrained to agree. A trial court is authorized to order an independent medical examination of a plaintiff upon a showing of good cause for such an exam. *Uhl v. C.H. Shoemaker & Son, Inc.*, 432 Pa.Super. 230, 234, 637 A.2d 1358, 1360 (1994); Pa.R.Civ.P. 4010(a). Whether good cause exists is a determination committed to the sound discretion of the trial court, whose decision may not be reversed in the absence of an error of law or abuse of discretion. *Uhl v. C.H. Shoemaker & Son, Inc.*, *supra* at 234, 637 A.2d at 1360.

> Pennsylvania Rule of Civil Procedure 4010(a) provides:
> (a) When the mental or physical condition (including blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

Pa.R.Civ.P. 4010(a).

■ The requirement of "good cause" set forth in Rule 4010(a) is designed to protect parties against an unwarranted invasion of their privacy and preclude the use of such an

---

**2.** As the Superior Court issued the *en banc* opinion in *Dodson v. Elvey*, 445 Pa.Super. 479, 665 A.2d 1223 (1995) on September 28, 1995, and the opinion did not appear in the advance sheets until November 24, 1995, the learned trial judge was without the benefit of that opinion when, on December 12, 1994, he ruled upon the post-verdict motions filed on July 18, 1994.

examination for improper purposes. *Uhl v. C.H. Shoemaker & Son, Inc., supra* at 233, 637 A.2d at 1360; *State Farm Insurance Companies v. Swantner,* 406 Pa.Super. 235, 243–47, 594 A.2d 316, 320–21 (1991). *See also:* Pa.R.Civ.P. 4010, Explanatory note (2). The rule further requires that the examinee's physical or mental condition be "in controversy." Rule 4010(a). Appellee does not dispute that his medical condition was "in controversy," since the nature and extent of appellee's injuries was the sole issue for resolution at trial in light of the stipulations concerning liability and the applicability of the limited tort threshold. Appellee contends, however, that the request was properly denied as appellants should have arranged for an IME prior to arbitration if they reasonably believed that such an examination was necessary to properly defend against the claims made by appellant.

While the motion to compel the examination was denied without explanation by the motions judge, Judge Lord has suggested in his post-trial motions opinion that the motion was denied not because of the absence of good cause, but rather because the request had first been presented after the arbitration hearing had been conducted, and even observed that:

> In January 1994 it was well known by the Philadelphia trial bar that requests for medical examinations made after an arbitration hearing would generally be denied unless there was a significant change in the plaintiff's medical condition or other particular good cause was shown.

This observation is the subject of discussion by the eminent Judge Eugene Edward Maier, Supervising Judge of the Discovery Motion Court of the Court of Common Pleas of Philadelphia County, in *Case Notes and Procedures of the Philadelphia Discovery Court,* Section 10.3, who recites:

> *Post–Arbitration Discovery* has been and will continue to be severely limited. Arbitration is a diversionary program to dispose of a claim without the extraordinary expense of and time of a Court and Jury trial. Generally speaking, post-arbitration interrogatories, request for production, depositions, medical exams, and other discovery requests, are not ordered, absent a showing of substantial change from Arbi-

tration to trial. For example, where an Arbitration matter was litigated with a claim of a broken toe, but on appeal, severe ankle and back injuries were alleged, additional discovery was ordered.

■ Pennsylvania Rule of Civil Procedure 239(a) defines a local rule as "every rule, regulation, directive, policy, custom, usage, form, or order of general application, however labeled or promulgated, which is adopted and enforced by a court of common pleas to govern civil practice and procedure." Pa. R.Civ.P. 239(a). The policy of the Philadelphia Court of Common Pleas to deny post-arbitration discovery requests is equivalent to a local rule pursuant to the definition provided by Pa.R.Civ.P. 239(a). However, if a practice or policy is to be effective and enforceable as a local rule, specific steps must be taken by the court of common pleas to promulgate, file, and publish the proposed rule.[3]

It appears, however, that:

(1) No steps have been taken in the Philadelphia County Court of Common Pleas to fulfill the mandates of Pa. R.Civ.P. 239(c) regarding post-arbitration discovery,

---

**3.** Pennsylvania Rule of Civil Procedure 239(c) sets forth the procedures for the implementation and promulgation of local rules by the courts of common pleas:

(c) To be effective and enforceable:

(1) A local rule shall be in writing.

(2) Seven certified copies of the local rule shall be filed by the court promulgating the rule with the Administrative Office of Pennsylvania Courts.

(3) Two certified copies of the local rule shall be distributed by the court promulgating the rule to the Legislative Reference Bureau for publication in the Pennsylvania Bulletin.

(4) One certified copy of the local rule shall be filed by the court promulgating the rule with the Civil Procedural Rules Committee, unless the rule relates to domestic relations matters, in which case it shall be filed with the Domestic Relations Committee.

(5) The local rule shall be kept continuously available for public inspection and copying in the office of the prothonotary or clerk of court. Upon request and payment of reasonable costs of reproduction and mailing, the prothonotary or clerk shall furnish to any person a copy of any local rule.

Pa.R.Civ.P. 239(c).

(2) The Rules of the Philadelphia County Court do not contain a recitation of the policy regarding post-arbitration discovery, and

(3) The policy has not been filed with the Administrative Office of the Pennsylvania Courts or been published in the Pennsylvania Bulletin.

We, therefore, conclude that the policy of the Court cannot serve as a valid basis for the denial of a motion to compel an independent medical examination of a plaintiff where the physical condition of the plaintiff is clearly at issue and the request is otherwise in conformity with the Pennsylvania Rules of Civil Procedure.

■ In any event, and more essentially, the policy which prohibits all post-arbitration discovery is invalid as a result of the conflict with the Rules of Civil. Procedure governing compulsory arbitration, namely Pa.R.Civ.P. 1311 and 42 Pa. C.S. § 7361(d). It is well-established that "[l]ocal courts have the power to formulate their own rules of practice and procedure." *Rieser v. Glukowsky,* 435 Pa.Super. 530, 541, 646 A.2d 1221, 1226 (1994). *Accord: Murphy v. Armstrong,* 424 Pa.Super. 424, 426–28, 622 A.2d 992, 994 (1993); *Pennridge Elec., Inc. v. Souderton Area Joint School Auth.,* 419 Pa.Super. 201, 214, 615 A.2d 95, 102 (1992). However, local rules are intended to implement the statewide rules, *Stock v. Arnott,* 415 Pa.Super. 113, 120, 608 A.2d 552, 555 (1992), and may " 'not be inconsistent with any general rule of the Supreme Court or any Act of Assembly.' " *Murphy v. Armstrong, supra* at 427, 622 A.2d at 994, *quoting* Pa.R.Civ.P. 239(b)(1).

Section 7361(d) of the Judicial Code, 42 Pa.C.S. § 7361(d), and Rule 1311 of the Rules of Civil Procedure provide for trial *de novo* following an appeal from an arbitration award. Our Supreme Court has previously held that a local rule, which limited the use at trial of witnesses who had not been called at a prior arbitration hearing, violated the *de novo* provision of the Judicial Code and the Rules of Civil Procedure, opining that the right to trial *de novo* included the right "to proceed to trial with no evidentiary limitations upon the parties other than those which would be applicable to an original trial."

*Weber v. Lynch,* 473 Pa. 599, 610, 375 A.2d 1278, 1283 (1977). The *Weber* court also concluded that, in providing for compulsory arbitration, the legislature "did not intend to limit the evidence presented at the *de novo* jury trial to that which had been presented to the arbitrators," as it would severely infringe upon a party's right to a trial by jury guaranteed by Article 1, section 6 of the Pennsylvania Constitution. *Weber v. Lynch, supra* at 607–09, 375 A.2d at 1282.

The instant refusal, based solely upon the aforecited policy, of the request to conduct an independent medical examination of the plaintiff, denied appellants the opportunity to present testimony from a physician who had examined appellee and who was qualified to offer testimony to refute the expert testimony presented by appellee on the issue of whether appellee had sustained a serious injury. This evidence was essential to the proper defense of the case, as evidenced by the comments of the trial judge at the close of the evidence that this was a "troublesome case," that resolution was "on the cusp," and that his decision as to whether appellee had, in fact, sustained a serious injury "could go either way." Accordingly, we are constrained to conclude that application of the policy expressed in Section 10.3, which is contrary to Rule 1311 of the Pennsylvania Rules of Civil Procedure and Section 7361(d) of the Judicial Code, was error requiring the award of a new trial.[4]

Judgment reversed. Case remanded. Jurisdiction relinquished.

---

**4.** We have not ruled on the challenge to the finding of the trial court that the injury sustained by appellee was a "serious injury" as defined by the MVFRL. This issue may again be presented to the trial court upon remand.