## Wilczynski v. Lackawanna County Multi-Purpose Stadium Authority

C.P. of Lackawanna County, no. 96 CV 3535.

*Patrick E. Dougherty* and *Paul T. Oven,* for plaintiffs.
*Francis G. Wenzel Jr.,* for defendant.

MINORA, *J.*, June 28, 1999—Defendant, Lackawanna County Multi-Purpose Stadium Authority, has filed a motion to compel a second independent medical examination of the plaintiff by Dr. Badigo on behalf of the defendant and defendant's liability insurance carrier. For the reasons set forth below, the defendant's motion to compel a second IME is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The complaint of the plaintiffs alleges that on July 22, 1994 at 9:30 p.m., the plaintiffs were lawfully on stadium's premises attending a baseball game as business invitees of the defendant. At that time, an accumulation of water or other liquid was allowed to exist on the stairwell of the stadium's premises between the upper deck and the main concourse. At that date, place and time, the plaintiff, Debra Wilczynski, while walking down the stairwell, was caused to fall by the liquid accumulation, violently striking her head, allegedly causing permanent closed head injuries in the nature of cognitive impairment. (See plaintiffs' complaint pp. 1-16.)

Approximately six months prior to the filing of this lawsuit, plaintiff voluntarily submitted herself for an evaluation by Dr. John R. Harvey, a licensed psychologist and director of psychology at Allied Services for the Handicapped. This evaluation took place on or about January 24 and 25, 1996 at the request of Cor-Vel Corporation, a claim corporation acting on Authority's behalf. Dr. Harvey conducted a number of tests including Wais-R; Wechsler Memory Scales; Woodcock-Johnson Psycho-Educational, Dean Woodcock Sensory Motor; Booklet Categories Test; MMPI-2; Beck Anxiety Inventory; Beck Depressing Inventory; and Tests of Variable

attention. As a result of the two-day examination and the battery of tests performed, Dr. Harvey generated a copious, thorough and comprehensive report covering 18 pages. (See p. 9 and exhibit 5 of defendant's motion for second IME.)

In his report, noted above, Dr. Harvey summarized that Debra Wilczynski now possesses intellectual abilities which are slightly below expectation based upon her premorbid functioning. He further notes weakness in auditory attention, short-term auditory memory, auditory active working memory and visual organization. Dr. Harvey also found Debra to have moderate difficulty with complex verbal and visual memory and she now has delayed recall showing moderate to severe weakness. The evaluation goes on to note that the response speed and the variability of the plaintiff are significantly high and are consistent with neurological difficulties.

In concluding, the doctor noted that overall, the data points to selective cognitive and mood deficits that are secondary to her head injury. His final diagnosis is amnestic disorder secondary to closed head injury and mood disorder secondary to closed head injury with depressive features.

Additionally, the plaintiff has received extensive treatment-oriented medical and psychological testing from her own group of health care professionals in addition to the defense independent medical exams.

Defendant now requests that the plaintiff be compelled to submit to a second IME by a different health care professional, Dr. Badigo, as opposed to their first examiner, Dr. Harvey, for essentially the following reasons: (1) In the last year the defendant has now acquired all of plaintiff's expert testing data; (2) Defendant has consulted with a new expert, Dr. Badigo, who suggests a need for

his examination and assessment; (3) Plaintiff's multiple experts justify an additional expert evaluation, examination and report; (4) A new exam is justified by the passage of time, the new or updated plaintiff's reports and the defendant should be allowed to choose its own IME expert.

It is significant that there is no allegation present that the plaintiff has sustained a new injury nor has the plaintiff been accused of deliberately concealing an injury at the time of the first examination. In such a case, consecutive examinations have been allowed. See *Lodolce v. Township of Roaring Brook,* 99 Lacka. Jur. 54, 57 (1998).

## DISCUSSION

Pa.R.C.P 4010(a) authorizes a trial court to order the mental or physical examination of a party when the mental or physical condition of that party is in controversy. In addition to the requirement of the party's condition being in controversy, this rule also provides that said examination may be granted only upon a motion for good cause shown. *John M. v. Paula T.,* 524 Pa. 306, 312, 571 A.2d 1380, 1383 (1990). The good cause requirement is intended to ensure that a plaintiff's privacy is not unduly evaded, *Uhl v. C.H. Shoemaker & Son Inc.,* 432 Pa. Super. 230, 234, 637 A.2d 1358, 1360 (1994), and to preclude the use of such examination for improper purposes. *McGratton v. Burke,* 449 Pa. Super. 597, 601-602, 674 A.2d 1095, 1097 (1996), *allocatur denied,* 546 Pa. 667, 685 A.2d 546 (1996). The determination of whether the requisite good cause exists is left to the sound discretion of the trial court and this discretion may not be reversed

on appeal unless it is manifestly unreasonable and/or an abuse of discretion is shown. *Id.*

In the instant case, this court is confronted with the issue of whether the defendant has the right to submit a plaintiff to a second IME by a new physician when the defendant, at its peril, chose not only the original IME physician but also the timing, the manner and the scope of that examination with the full cooperation of the plaintiff. The defendant argues that the plaintiff has clearly made her physical condition an issue in this particular case by raising numerous allegations of severe and serious personal injuries. The defendant argues that the nature of the accident, the slip and fall, the fact that it was a closed head type of injury with related cognitive impairments, raise an issue that would make one question the severity of the plaintiff's allegations of injuries.

In addition, the defendant argues that, in order for the closed head injury and cognitive impairments to be evaluated, it is necessary to have both a before and after profile of the plaintiff. Therefore, the defendant is now requesting that the plaintiff undergo an IME by a neuropsychologist regarding the closed head injuries and cognitive impairments that she is alleged to have suffered as a result of her slip and fall at the Lackawanna County Stadium. In an attempt to have the plaintiff submit to this second IME, the defendant has made arrangements for examination by a doctor from the Philadelphia area who the court believes would be willing to travel to this area to accommodate the needs of the plaintiff.

Initially, we should note that the plaintiff never disputed the fact that she is required to submit to an IME. Although the court need not address this issue, for the purposes of completeness, we shall. In order to dispose of this issue, we review again the examining governing

civil procedure rule, Rule 4010, Pennsylvania Rules of Civil Procedure, it provides as follows: "(a) [w]hen the mental or physical condition [including blood group] of a party or . . . under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a [physician] or to produce for examination [a] person in [his] custody or legal control. The order may be made only [up]on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

In resolving this issue, we need only look at the first prerequisite in the above referenced Rule of Civil Procedure. Whether the plaintiff's physical condition is in controversy in the current case is the threshold issue. We hold that the plaintiff has clearly made her physical condition an issue in controversy in the case at bar. We find that due to the serious nature and extent of the plaintiff's closed head injuries and her contention that these injuries were a direct result of a fall on the premises of the Lackawanna County Stadium, these factors show that the current litigation is demonstrative of the fact that the plaintiff's physical condition is presently in controversy. In support of our holding, we need only look at the plaintiff's own complaint in which she specifically details her claims of injuries to a closed head cognitive impairment injury.

In addition, we should also note that the plaintiff does not dispute the fact that she has placed her physical injury in controversy nor does the plaintiff argue that she will not submit to an IME. In fact, based upon all of the above, we can resolve this issue by first holding that the

plaintiff has placed her physical condition in controversy and thus, the defendant is entitled to have the plaintiff undergo an IME. Having disposed of this issue, we are now confronted with whether the plaintiff needs to be required to submit to a second IME.

As was stated in the introductory comments of this opinion, this plaintiff has already submitted herself to an independent medical examination by Dr. Harvey, an expert chosen by the defendant in this particular case. Dr. Harvey's evaluation took place on or about January 24 and 25, 1996 at the request of Cor-Vel Corporation, a claim corporation acting on the defendant Authority's behalf. Dr. Harvey conducted a series of tests over a period of two days and produced an extensive report.

Rule 4010 is silent with regard to the number of examinations that a plaintiff or a party can be compelled to submit to.

Pa.R.C.P. 4010(a) does not specifically permit or prohibit more than one examination of a plaintiff, and a defendant bears a heightened burden of demonstrating a good cause for a supplemental medical examination. Rule 4010(a) does not give a party mandatory rights to more than one physical examination of the other party, but a court may permit an additional examination if subsequent discovery reveals that the plaintiff is alleging a new injury since that date of the initial examination or deliberately concealed an injury at the time of the first examination. See *Schroth v. Philadelphia Rapid Transit Co.,* 280 Pa. 36, 40, 124 A. 279 (1924). In that case, an additional examination was denied since there was not evidence of concealment from the physician. *Lodolce v. Township of Roaring Brook,* 99 Lacka. Jur. 54, 57 (1998).

However, a court is allowed to permit an additional examination if subsequent discovery reveals that the

plaintiff is alleging a new injury since that date of the initial examination or if the plaintiff deliberately conceals an injury at the time of the first examination. See *Lodolce, supra* at 57. The *Lodolce* case also stated that: "[I]n those unusual instances in which consecutive examinations have been allowed, exceptional circumstances have existed to justify the inconvenience and the initial burden to the plaintiff." *Id.* Similarly, a well recognized treatise on discovery procedures has noted the following:

"Rule 4010 is silent on the number of examinations to which a party can be subjected. Whether more than one examination should be allowed therefore, falls wholly within the discretion of the court. A second examination may be proper in a case in which the plaintiff's answers to written interrogatories or questions propounded at an oral deposition disclose a claim for an injury which was not originally asserted and which was not inquired into by the physician at the first examination. A second examination may also be proper where an injury was deliberately concealed at the first examination and was subsequently discovered by the moving party." Goodrich-Amram 2d, vol. 18 §4010(a) p. 358.

Instantly, we find that there is no indication in this case that the plaintiff has alleged any new injuries or deliberately concealed her original injury. We also find that there was no evidence of exceptional circumstance to justify the inconvenience and additional burden of having the plaintiff undergo an additional IME with another physician. Because the determination of whether the plaintiff should submit to two separate IMEs is at the sound discretion of this court, we hold that there are no reasons yet advanced by the defendant to justify the

necessity of the plaintiff undergoing a second medical examination by a new physician.

The reasons propounded by the defendant have failed to demonstrate sufficient grounds for subjecting the plaintiff to serial examinations by two different physicians. There is no suggestion in the defendant's motion that the plaintiff withheld any medical history or information from Dr. Harvey or that she was anything less than completely candid, forthright and honest. Nor is there any indication in the defendant's motion that the plaintiff has developed a new injury; indeed, the medical conditions that she currently asserts as being caused by the fall at Lackawanna County Stadium are identical to those which were pled and evaluated by Dr. Harvey. In the interim, however, the court would allow Dr. Harvey to update his original evaluation and issue a supplemental report and have a second examination of the plaintiff for the reasons that have been advanced by the defendant and also because this matter has been agreed to by the plaintiff. Apparently, there exists new data that is now available that was not originally available to Dr. Harvey. If these items can be made available to Dr. Harvey and if after review of these items he feels it presents the necessity for yet a second examination of the plaintiff in order to update his original examination of the plaintiff, the court will allow this.

It should remain clear that all updated records that were not provided to Dr. Harvey in his prior examination are first to be provided by defense counsel to their chosen expert, Dr. Harvey. When Dr. Harvey has been given an opportunity to review these updated materials that he did not have the benefit of having at his original examination, Dr. Harvey can then, if needed, be allowed to up-

date his original examination of the plaintiff with a supplemental examination. The court is disposed to offering this as a compromise solution because the plaintiff has indicated a willingness to compromise with such a solution; otherwise, it would not be a difficult conclusion for the court to render a decision that no supplemental examination should be allowed.

## CONCLUSION

In sum, this court holds that the plaintiff should be allowed to submit to an additional IME with the defendant's original health care provider, Dr. Harvey, because she has placed her own physical condition in controversy in the present case. The defendant was free to choose its original health care provider and it has done so. Dr. Harvey has provided a copious report from his original examination. Any new materials that were not a part of that should be provided to Dr. Harvey. If Dr. Harvey elects to need an additional examination of the plaintiff to supplement his original report, after the review of new data, then the court will allow this.

For these reasons and those stated above, we hold that the defendant's motion to compel attendance at a second independent medical examination with a second neuropsychologist is denied; however, the plaintiff will submit herself to a supplemental examination by Dr. Harvey since he has consented to do so and since there may be a need to update his original report.

The terms of this order should be completed within the time duration of 60 days, so as to not unduly delay the proceedings.

## ORDER

And now to wit, June 28, 1999, it hereby ordered and decreed that the defendant's motion to compel attendance at an independent medical examination of a second health care provider, Dr. Badigo, is denied. However, the defendant shall be allowed to have a supplemental examination conducted of the plaintiff by Dr. Harvey if after Dr. Harvey receives the new materials he feels such an examination is warranted in order to update his original findings. The parties are to proceed in a manner consistent with this opinion and implemented within a 60 day-time period.