J-A12017-24

2024 PA Super 251

| | | |
|---|---|---|
| RONALD C. VERBA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ERIE INSURANCE EXCHANGE | : | |
| | : | |
| | : | No. 2633 EDA 2023 |

Appeal from the Order Entered September 18, 2023
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CV-2021-02690

BEFORE: PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

OPINION BY KING, J.:                         **FILED OCTOBER 31, 2024**

Appellant, Ronald C. Verba, appeals from the order entered in the Northampton County Court of Common Pleas, which required him to submit to an independent medical examination ("IME") by a qualified examiner selected by Appellee, Erie Insurance Exchange. We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> [Appellant] was the driver of a vehicle stopped in traffic when his vehicle was struck in the rear by another motor vehicle on or about September 10, 2018. He alleged to have "serious and severe injuries" as a result of the accident "including but not limited to his head, jaw, neck, back, shoulders, arms, hands, spine, tinnitus, and/or aggravation of conditions …."
>
> At the time of the accident, [Appellant] had an insurance policy with [Appellee] that provided: "[w]hen there is an accident or loss, 'anyone we protect' will at 'our' request,

_____

[*] Former Justice specially assigned to the Superior Court.

separately submit to physical and mental examination by doctors 'we' choose as often as 'we' reasonably require. 'We' will pay for these examinations."

[Appellee] sent a letter on April 29, 2019, demanding [Appellant] undergo an IME in accordance with its policy. [Appellant] then submitted himself to Dr. Robert Grob, D.O., and underwent the IME. [Appellee] selected Dr. Grob and paid for the examination.

Thereafter, on August 6, 2019, [Appellee], relying upon the results of the IME, began denying payment for what [Appellant] contends were "reasonable and necessary medical expenses related to the accident."

On November 20, 2019, the Pennsylvania Supreme Court decided *Sayles v. Allstate Ins. Co.*, [656 Pa. 99, 219 A.3d 1110 (2019)], in which it held substantially similar insurance language as contained in [Appellee's] policy concerning when an insured must submit to an insurance IME was held to be void as against public policy and the terms of the Pennsylvania Motor Vehicle Financial Responsibility Law [("MVFRL")].

[Appellant] sued [Appellee] on April 21, 202[1], alleging breach of contract and bad faith by improperly denying payment for "reasonable and necessary" past, present and future medical expenses related to the accident.

By letter dated June 30, 2022, [Appellee] sought another IME of [Appellant] and suggested dates to see Scott Sexton, M.D. for that purpose. [Appellant] refused [Appellee's] request that he submit to another IME on the basis that it would be duplicative of Dr. Grob's IME, and [Appellee] did not demonstrate "good cause" for the examination.

Nonetheless, [Appellant] contacted Dr. Sexton, learned that Dr. Sexton had not yet been retained by [Appellee] and submitted himself to Dr. Sexton, who performed an IME on [Appellant]. Dr. Sexton wrote a report that [Appellant] submitted to [Appellee] on or about October 25, 2022.

[Appellee] presented a motion on June 7, 2023, to compel an IME of [Appellant]. The motion was granted by order of

September 18, 2023, requiring [Appellant] submit to a qualified examiner selected by [Appellee] for an IME within sixty (60) days of that order.

(Trial Court Opinion, filed 10/23/23, at 1-3) (internal record citations omitted).

Appellant timely filed a notice of appeal on October 10, 2023. That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed a Rule 1925(b) statement on October 16, 2023. On November 7, 2023, this Court directed Appellant to show cause as to why the order on appeal satisfied the collateral order doctrine. Appellant filed a response to the show cause order on November 16, 2023, and this Court discharged the show cause order on December 5, 2023.

Appellant now raises four issues for our review:

Is the 9/18/2023 order compelling [Appellant's] subjection to a physical examination a collateral order?

Did the trial court commit prejudicial error of law and/or abuse of discretion by granting the motion for reconsideration and compelling an IME where the court did not apply a proper definition of good cause, finding that the mere existence of a PIP claim satisfied good cause?

Did the trial court commit prejudicial error of law and/or abuse of discretion by granting the motion for reconsideration and compelling an IME where insufficient evidence establishing good cause was submitted by [Appellee] to sustain its burden of showing that the proofs supplied by [Appellant] in support of the claim were not adequate, especially considering [Appellant] went to 2 IMEs that [Appellee] had requested [Appellant] to see previously?

Even if the court properly found good cause to exist, under **Sayles**, did the court err by abdicating its responsibility to [choose] the IME doctor, and instead, improperly delegate … its authority to appoint the examiner and related issues to [Appellee], especially considering that [Appellant] had already been examined by the doctor that [Appellee] wanted [Appellant] to see?

(Appellant's Brief at 5-6) (internal quotation marks omitted).

Consistent with Appellant's first issue, we begin by addressing the propriety of this interlocutory appeal. "An appeal may be taken only from a final order unless otherwise permitted by statute or rule." **Carbis Walker, LLP v. Hill, Barth and King, LLC**, 930 A.2d 573, 577 (Pa.Super. 2007) (quoting **Ben v. Schwartz**, 556 Pa. 475, 481, 729 A.2d 547, 550 (1999)). Collateral orders are an exception to this general rule. **See** Pa.R.A.P. 313.

To qualify as a collateral order under Rule 313, the order must be separate and distinct from the underlying cause of action. Additionally, it is not sufficient that the issue under review is important to a particular party; it must involve rights deeply rooted in public policy going beyond the particular litigation at hand. Finally, there must be no effective means of review available after an Order requiring the production … is reduced to judgment.

Significantly, Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action.

**Berkeyheiser v. A-Plus Investigations, Inc.**, 936 A.2d 1117, 1123-24 (Pa.Super. 2007) (internal citations and quotation marks omitted).

Here, the order at issue is separable from the main cause of action, as this Court can address Appellant's claim regarding the propriety of an IME

without an analysis of the underlying breach of contract action. Additionally, an order directing an individual to submit to an IME implicates issues concerning the privacy of the individual subjected to the examination. *See* ***Uhl v. C.H. Shoemaker & Son, Inc.***, 637 A.2d 1358, 1360 (Pa.Super. 1994). Privacy is an issue that is deeply rooted in public policy. *See **Berkeyheiser,** **supra*** at 1124. Further, enforcement of the order would result in the irreversible intrusion upon Appellant's right to privacy. Thus, there would be no effective means of review available. ***See id.*** Accordingly, the order on appeal is collateral to the main cause of action and immediately appealable. ***Id.***

Appellant's second and third issues are related, and we address them together. Appellant argues that the trial court found "good cause" to order the IME based on the continuing nature of Appellant's alleged damages and the four-year lapse of time between the pre-litigation IME and present day. Appellant maintains, however, that the court did not utilize the proper definition of good cause to reach this conclusion. Appellant asserts that good cause to compel an IME requires the petitioner to allege "(1) facts showing that proof supplied in support of the claim [is] inadequate; (2) that the proposed physical examination will substantially assist in evaluating the claim; [and] (3) the amount of the claim justifies the order." (Appellant's Brief at 42-43) (quoting ***McDaniel v. State Farm Mut. Auto. Ins. Co.***, 6 Pa.D.&C.4th 520 (Mercer Cty. 1990)). Pursuant to this definition, Appellant

avers that the court should have denied Appellee's motion to compel.

Additionally, Appellant contends that Appellee "failed to establish good cause by demonstrating why the proof submitted in support of [Appellant's] claim was insufficient to support the claim." (*Id.* at 52). Appellant insists that Appellee "cannot legitimately cite the previous IME it conducted in 2019 to establish the grounds for another IME with a different physician[.]" (*Id.* at 53). Specifically, Appellant relies on **Sayles** for the proposition that the 2019 IME was improper where it was conducted pursuant to an illegal insurance "contract provision stating that [Appellant] must appear for an IME whenever [Appellee] decides it wants one." (*Id.* at 54).

> On the flipside of that coin, if the Court were to decide that Dr. Grob's IME is not precluded in this proceeding, then that clearly establishes that [Appellee] already has an IME and does not need another one. Hence, [Appellant] should not be compelled to attend another IME.

(*Id.* at 57). Appellant concludes that the court committed an error of law by failing to apply the proper definition of good cause, and this Court must reverse the order granting Appellee's motion to compel an IME. We disagree.

"A trial court is authorized to order an independent medical examination of a plaintiff upon a showing of good cause for such exam." **McGratton v. Burke**, 674 A.2d 1095, 1097 (Pa.Super. 1996), *appeal denied*, 546 Pa. 667, 685 A.2d 546 (1996). "Whether good cause exists is a determination committed to the sound discretion of the trial court, whose decision may not be reversed in the absence of an error of law or abuse of discretion." **Id.**

"Furthermore, our task in reviewing the discretion exercised by the [trial] court is not to substitute our judgment for that of the [trial] court, but to determine if the [trial] court's action was manifestly unreasonable." ***Uhl, supra*** at 1360.

Both the MVFRL and Pa.R.C.P. 4010 provide instruction regarding when a court may order an IME. Section 1796(a) of the MVFRL provides:

> **§ 1796. Mental or physical examination of person**
>
> **(a) General rule.—**Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa.C.S.A. § 1796(a). Rule 4010 adds:

> **Rule 4010. Physical and Mental Examination of Persons**
>
> (a)(1)    As used in this rule, "examiner" means a licensed physician, licensed dentist or licensed psychologist.
>
> (2)    When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by an examiner or to produce for examination the person in the party's custody or legal control.

>    *Note:* The examination may include blood or genetic testing.
>
>    (3)        The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

Pa.R.C.P. 4010(a)(1)-(3).

This Court has evaluated the differences between Section 1796 and Rule 4010 as follows:

>    Rule 4010, which predated section 1796 of the Vehicle Code, differs only in that it applies to a pending action as opposed to a claim for medical income loss or catastrophic loss benefits, and the rule requires that a *controversy* exists, whereas section 1796 merely provides the mental or physical condition is *material* to a claim.  The provision of "good cause shown" is identical in both.  The terms "in controversy" and "material to any claim" cannot be read interchangeably.  "In controversy" is read
>
>>    "more broadly, to include any action in which the condition will be a material issue, although no personal injuries are claimed….
>>
>>    If the phrase "in controversy" is ambiguous, and capable of the two meanings which the federal cases have suggested, the history of physical examination in Pennsylvania makes it clear that the broader meaning is intended."
>
>    Goodrich-Amram 2d § 4010(a):4, p. 266.
>
>    "Material to the claim," as contained in section 1796, limits the examination to those instances where the information is essential to confirm the need to pay or continue payment of the claim.  Under Rule 4010, a controversy exists by virtue of a pending action in which the physical or mental condition of a party is at issue.

*State Farm Ins. Companies v. Swantner*, 594 A.2d 316, 320-21 (Pa.Super. 1991), *appeal denied*, 530 Pa. 633, 606 A.2d 903 (1992) (emphasis in original; footnote omitted).

As a result, IMEs pursuant to Section 1796 "may arise out of a lack of knowledge rather than a controversy, and it is up to the trial court to determine whether, on the basis of information supplied, a medical examination is warranted to ascertain the needed information." *Id.* at 321. The good cause requirement under Section 1796 is "related solely to the medical condition as it is material to the claim regardless of a controversy that would be the focus of a cause of action. Such a claim may be made independent of any cause of action and is a separate, non-ancillary proceeding that may be invited by the MVFRL…." *Id.* at 322.

"The requirement of 'good cause' set forth in Rule 4010(a) is designed to protect parties against an unwarranted invasion of their privacy and preclude the use of such an examination for improper purposes." *McGratton, supra* at 1097. "If the controversy in a pending action (Rule 4010) relates to the very existence of a medical condition, this entails a fundamental issue as to the validity of the cause of action, and absent proof the case may not proceed." *Swantner, supra* at 322. "Good cause to obtain an examination under those circumstances is more liberally available." *Id.*

Instantly, Appellant participated in the 2019 IME with Dr. Grob in accordance with the insurance policy Appellee had issued. Appellant

subsequently filed his lawsuit against Appellee. After litigation commenced, Appellee sought to schedule an updated IME with Dr. Sexton. Appellant initially refused to participate in an IME with Dr. Sexton because it "would be duplicative" of Dr. Grob's IME, and "good cause was not established for even Dr. Robert Grob's examination." (Exhibit C to Motion to Compel IME, dated 7/5/22, at 1). After learning that Appellee had yet to retain Dr. Sexton, however, Appellant retained Dr. Sexton and voluntarily participated in an IME. Appellee then sought to compel Appellant to submit to an IME with an examiner of its choosing, pursuant to Rule 4010. (*See* Appellee's Brief in Support of Motion for Reconsideration, filed 6/30/23, at 2-3) (unnumbered).

Our review of the record confirms that Appellant's physical condition remained in controversy during the pendency of the action. *See McGratton, supra* at 1097 (stating that plaintiff's medical condition was in controversy where "the nature and extent of [the plaintiff's] injuries was the sole issue for resolution at trial"). We emphasize that Appellant's complaint alleged that the 2018 accident was the proximate cause of "serious and severe injuries, including but not limited to his head, jaw, neck, back, shoulders, arms, hands, spine, tinnitus, and/or aggravation of conditions[.]" (Complaint, filed 4/21/21, at ¶9). Nevertheless, Appellant's deposition testimony mentioned that he suffered from "radiating pain" on the right side of his neck at least five

years prior to the accident at issue. (N.T. Deposition, 10/26/22, at 29).[1] Appellant's medical records also revealed a history of fibromyalgia, and Appellant reported neck pain, chronic headaches, and lower back pain during a medical appointment three weeks prior to the accident. (*See* Deposition Exhibit 1, dated 8/16/18, at 3).

The trial court relied on the "nature of [Appellant's] alleged damages and his claim [that] such damages are continuing and will continue into the future," as well as "the four-year lapse of time between Dr. Grob's IME and now" in concluding that Appellee had demonstrated good cause to compel another IME. (Trial Court Opinion at 4). The trial court also determined "it is not unreasonable for [Appellee] to request a current IME by an examiner of its choosing rather than being required to rely on an examiner paid for by [Appellant]." (*Id.*) Considering the relevant authority, we cannot say that the court committed any legal error in conducting its evaluation of good cause. *See Swantner, supra*. *See also McGratton, supra* (explaining that court's refusal of request to conduct IME of plaintiff denied defendant opportunity to present testimony from physician who had examined plaintiff and who was qualified to offer testimony to refute plaintiff's expert testimony on issue of whether plaintiff had sustained serious injury; such evidence was essential to proper defense of case). Based upon the foregoing, we conclude that the

_____

[1] Appellant's deposition transcript is included in the certified record as Exhibit D to Appellee's motion to compel the IME.

- 11 -

court articulated adequate reasons to support its finding of good cause, and the court did not abuse its discretion or otherwise commit reversible error.[2] *See id.*; *Uhl, supra*. Thus, Appellant is not entitled to relief on his second and third issues.

In his fourth issue, Appellant contends that the trial court improperly relinquished its authority to choose an examiner for the IME, even if the court

---

[2] The trial court acknowledged our Supreme Court's decision in *Sayles* as follows:

> [T]here has been no determination that the *Sayles* decision should be applied retroactively to void previously completed IMEs. … Furthermore, *Sayles* dealt with whether an insurance carrier could require its insureds to submit to an IME whenever and how often it wanted; it did not deal with whether an insurance IME was appropriate, *i.e.* for "good cause" in any given case. Finally, if Dr. Grob's IME was determined to be of no effect, that would be all the more reason for [Appellee] to request one now in light of the alleged injuries to [Appellant] and the passage of time. Otherwise, [Appellee] would be in the position of having to continue to pay for all treatment of [Appellant's] alleged injuries upon [Appellant's] submissions without the ability to question whether such injuries were caused by the accident and are ongoing.

(Trial Court Opinion at 3-4). We accept this analysis. To the extent Appellant relies on *Sayles* to dispute the court's findings, we reiterate that *Sayles* does not specifically address a situation where an IME was granted under Rule 4010. *See Sayles, supra* at 126, 219 A.3d at 1126 (stating that "these IME policy provisions [requiring insureds seeking medical benefits to submit to examinations by physicians selected by insurers as often as reasonably required] manifestly conflict with, and are repugnant to, the statutory protections for individuals insured under automobile insurance policies regarding the conduct of IMEs as established by the General Assembly in Section 1796(a); consequently they are void as against the public policy of this Commonwealth").

properly found good cause to compel the IME. Again, Appellant relies on *Sayles* for the proposition that "under Section 1796(a), if the judge does grant an insurer's request for the IME, the judge selects the physician who will perform the IME[.]" (Appellant's Brief at 58) (quoting *Sayles, supra* at 125, 219 A.3d at 1126). As discussed above, however, the order at issue relates to an IME scheduled in conjunction with a pending action, as contemplated by Rule 4010. *See Swantner, supra* at 320-21. Thus, Section 1796(a) does not apply. As Appellant does not develop this claim further, we cannot say that he is entitled to relief on his fourth issue. Accordingly, we affirm the order requiring Appellant to submit to an IME.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/31/2024