**[J-49AB-2019]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| SAMANTHA SAYLES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : : | No. 58 MAP 2018 |
| | : | Certification of Question of Law from |
| | : | the United States Court of Appeals for |
| Appellee | : | the Third Circuit at No. 17-3463. |
| | : | |
| | : | ARGUED: May 15, 2019 |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | |
| | : | |
| Appellant | : | |
| | | |
| WILLIAM H. SCOTT, | : | No. 59 MAP 2018 |
| | : | |
| Appellee | : | Certification of Question of Law from |
| | : | the United States Court of Appeals for |
| | : | the Third Circuit at No. 17-3769. |
| v. | : | |
| | : | ARGUED: May 15, 2019 |
| | : | |
| TRAVELERS COMMERCIAL INSURANCE COMPANY, | : : | |
| | : | |
| Appellant | : | |


**OPINION**


**JUSTICE TODD**                                                    **DECIDED: November 20, 2019**

In these consolidated matters, we answer a certified question from the United States Court of Appeals for the Third Circuit: Does an automobile insurance policy provision, which requires an insured seeking first-party medical benefits under the policy to submit to an independent medical exam whenever the insurer requires and with a

doctor selected by the insurer, conflict with 75 Pa.C.S. § 1796(a) of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), such that the requirement is void as against public policy? After review, we conclude that the provision conflicts with Section 1796(a), and is void as against public policy.

## I. Factual Background and Procedural History

This matter arises out of two separate lawsuits commenced in the courts of common pleas which were subsequently removed to federal district courts on the basis of diversity jurisdiction and thereafter consolidated for disposition by the United States Court of Appeals for the Third Circuit.

## A. Scott v. Travelers (59 MAP 2018)

In 2009, Appellee William H. Scott was covered by an automobile insurance policy issued by Appellant Travelers Commercial Insurance Company ("Travelers"),[1] which contained a clause requiring Scott, if he filed a claim for first-party medical benefits, to "[s]ubmit, as often as [Travelers] reasonably require[s] to physical exams by physicians [Travelers] select[s]."[2] Travelers Automobile Insurance Policy at 16 (Travelers Joint Appendix at 205a).

Scott was injured in an automobile accident on April 8, 2009. He sought reimbursement from Travelers under his automobile policy for his medical expenses, as

---

[1] A subsidiary of The Travelers Companies, Incorporated, Standard Fire Insurance, contended in the proceedings in the United States District Court for the Middle District of Pennsylvania that it should have been named as the defendant, not Travelers; however, the automobile policy in question was issued by Travelers Commercial Insurance Company. *See* Travelers Automobile Insurance Policy (Joint Appendix to Brief for Travelers Commercial Insurance Company filed in *Scott v. Travelers Commercial Ins. Co.*, 17-3769 (3d Cir.) (hereinafter "Travelers Joint Appendix") at 190a). In any event, the litigation has proceeded through the federal courts with Travelers Commercial Insurance Company listed in the caption as the named defendant, so we will continue to adhere to that nomenclature.

[2] The parties' current designations as Appellant and Appellee were made by our Court.

they were first-party benefits, and Travelers responded to his request by sending a letter stating that he was to be scheduled to undergo an independent medical exam ("IME"), pursuant to the right Travelers claimed it possessed to require such an examination under the above-referenced clause in its insurance policy.

Scott, through his attorney, sent a responsive letter to Travelers requesting that Travelers submit a list of three doctors, whom Scott indicated that he would consider allowing to examine him, even though Travelers had not obtained a court order. Travelers did not send such a list, but, instead, renewed its request that Scott submit to an IME it had scheduled.

Scott did not attend the scheduled IME, and Travelers discontinued paying Scott's outstanding medical bills. Scott then sued Travelers in the Court of Common Pleas of Dauphin County alleging, *inter alia*, that Travelers had breached its contract with him by imposing its IME requirement, which he contended conflicted with Section 1796(a) of the MVFRL, which requires a court order, based upon a showing of good cause by an insurer paying first-party benefits, to compel an insured to submit to an IME.[3] [4] Travelers

---

[3] Section 1796(a) provides:

> **(a) General rule.--**Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa.C.S. § 1796.

[4] Scott also raised a claim under the Pennsylvania Insurance Bad Faith Act, 42 Pa.C.S. § 8371, which is not presently before us.

responded by removing the action to the United States District Court for the Middle District of Pennsylvania, where the matter was assigned to United States Magistrate Judge Susan E. Schwab. Subsequently, both Scott and Travelers filed cross motions for summary judgment.

In an opinion accompanying her ruling on these motions, Judge Schwab addressed whether the IME clause violated Section 1796(a), and, hence was void as against public policy. She initially determined that our Court had never directly addressed this question; thus, she endeavored to predict how our Court would rule on this issue.[5] Judge Schwab first examined the language of Section 1796(a), and she found it to be plain and unambiguous in requiring the insurer to petition a state court to obtain an order for an IME, and similarly clear in requiring the insurer to demonstrate good cause for the issuance of such order. In her view, Section 1796(a) did not permit Travelers to unilaterally terminate Scott's first-party benefits for his failure to comply with its request that he undergo an IME. Accordingly, because Judge Schwab found that the language in Travelers' insurance policy, permitting it to require that its insured undergo an IME if its insured refuses to voluntarily comply with its request for an IME, violated Section 1796(a). Thus, she predicted that our Court "would find that, absent voluntary compliance on the part of the insured, insurers . . . are not free to disregard the statutory language in § 1796, which sets forth the standard by which an insured may be forced to undergo an IME."

---

[5] As a general matter, a federal court sitting in diversity, when confronted with an issue of state law that has not been ruled on by the jurisdiction's highest court, must predict how that court would resolve the question. In making this prediction, the court must consider the following factors: (1) what that jurisdiction's highest court has said in related areas; (2) decisional law from the jurisdiction's intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue. *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006).

*Scott v. Travelers Ins. Co.*, 1:14-CV-00535, 2016 WL 5851960, at 7 (M.D. Pa. Oct. 6, 2016) (hereinafter, "*Scott*").

In reviewing the extant caselaw on this question from other Pennsylvania courts, Judge Schwab noted that the sole Pennsylvania intermediate appellate court opinion to consider whether an insurer could compel an insured to submit to an IME absent a court order avoided answering this question, and, hence, was unpersuasive. *See Fleming v. CNA Ins. Co.*, 597 A.2d 1206 (Pa. Super. 1991) (holding that insurer was entitled to have its insured submit to an IME when insured submitted claims for medical bills and lost wages under provision of its automobile policy which gave it the right to request such an exam; however, the court specifically noted that insured did not challenge this provision as being void as against public policy). For this reason, Judge Schwab also declined to follow the ruling of the United States District Court of the Eastern District of Pennsylvania, *Williams v. Allstate Insurance Company*, 595 F. Supp.2d 532 (E.D. Pa. 2009), as it relied heavily on *Fleming* to predict that this Court would find this type of provision to be enforceable. Judge Schwab also noted that Judge R. Stanton Wettick of the Court of Common Pleas of Allegheny County, in *Nationwide v. Hoch*, 36 Pa. D. & C.4th 256 (Allegheny County Common Pleas 1997), had also refused to follow *Fleming* because it never squarely addressed this question; rather, Judge Wettick continued to adhere to his then-decade-old decision in *Erie Insurance Exchange v. Dzadony*, 39 Pa. D. & C.3d 33 (Allegheny County Common Pleas 1986), holding that such clauses violate Section 1796(a) and, hence, are unenforceable. *Scott,* at 9. Judge Schwab ultimately determined, based on her prediction that our Court would find that the Travelers policy provision requiring the IME conflicted with Section 1796(a), that it was void as against public policy. Thus, she concluded that Scott was entitled to judgment as a matter of law.

Travelers sought, and was granted, the right to take an interlocutory appeal of this decision to the United States Court of Appeals for the Third Circuit.

### B. Sayles v. Allstate (58 MAP 2018)

In 2015, Appellee Samantha Sayles was covered by an automobile policy issued by Appellant Allstate Insurance Company ("Allstate"). Allstate's policy contained a clause, similar to the one in Scott's policy, providing that, in order to receive first-party medical benefits, the insured "shall submit to mental and physical examinations by physicians selected by **us** when and as often as **we** may reasonably require." Allstate Automobile Insurance Policy at 12 (Joint Appendix to Brief for Allstate Insurance Company filed in *Sayles v. Allstate Ins. Co.*, 17-3463 (3d. Cir.) at A168) (emphasis original).

In December 2015, Sayles was injured in an automobile accident, necessitating her medical treatment. She sought reimbursement of the amount of her medical bills under her policy's provision for the payment of first-party medical benefits, which obligated Allstate to pay her up to $5,000 per person.

In response, Allstate sent a letter to Sayles' attorney requesting that she submit to an IME, which would be performed by a doctor of Allstate's choosing. Allstate refused to pay Sayles' medical bills until she did so. Allstate was apparently acting pursuant to the above-referenced provision of the insurance policy, as it never sought a court order under Section 1796(a) to compel Sayles to undergo such an exam. Sayles never submitted to an IME, and Allstate refused to pay her claim for medical benefits.

Sayles subsequently sued Allstate in the Court of Common Pleas of Pike County, alleging, *inter alia*, that Allstate's conditioning her first-party medical benefits on the IME violated Section 1796(a). Sayles also sought a declaratory judgment pronouncing Allstate in violation of Section 1796(a), an order requiring Allstate to hereinafter comply

with Section 1796(a), and certification of the suit as a class action.[6] In response, Allstate successfully removed the action to the United States District Court for the Middle District of Pennsylvania.

Allstate then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which was adjudicated by the Honorable Richard A. Caputo of the Middle District of Pennsylvania. *Sayles v. Allstate Ins. Co.*, 260 F. Supp.3d 427 (M.D. Pa. 2017). Addressing Sayles' claims under Section 1796(a), Judge Caputo, like Judge Schwab, observed that our Court has never directly addressed this question.

After reviewing the terms of Section 1796(a), as Judge Schwab had previously determined, Judge Caputo found the language of Section 1796(a) to prohibit the IME which Allstate requested. In this regard, Judge Caputo reasoned that Section 1796(a) enumerated specific requirements which an insurer must meet in order to compel its insured to submit to an IME: that the insurer file a petition in court; that the insurer carry its burden to show that the insured's mental or physical condition is material to the claim for first-party benefits; and that the insurer demonstrate good cause for the exam. By contrast, Allstate's policy allowed it to compel its insured to submit to an IME without filing a petition with a court, and without any demonstration of good cause. Thus, the policy transferred "control over the statutory safeguards from the province of an impartial court to the discretion of an interested insurer." *Id.* at 436. Consequently, Judge Caputo predicted that our Court would find that, because of the conflict between the IME requirement of the policy and Section 1796(a), the IME requirement violated public policy.

---

[6] Sayles raised additional claims against Allstate for violating the Pennsylvania Unfair Trade and Consumer Practices Law, 73 Pa.C.S. § 201-1, *et seq.*, the Pennsylvania Insurance Bad Faith Act, and various common law claims for unjust enrichment, intentional misrepresentation, and for the value of the medical benefits she was not paid. Those claims are not before us.

Judge Caputo, like Judge Schwab, found the reasoning of *Fleming* unpersuasive, and likewise rejected the prediction of the District Court in *Williams* that our Court would find such an IME clause consonant with Section 1796(a). Judge Caputo instead found persuasive Judge Wettick's reasoning in *Erie* and *Hoch* that such clauses were in direct conflict with Section 1796(a) and thus unenforceable. Accordingly, because of his prediction that our Court would find the IME clause void as against public policy, Judge Caputo denied Allstate's motion to dismiss. Allstate, like Travelers, was granted permission to take an interlocutory appeal of this decision to the Third Circuit Court of Appeals.

The Third Circuit consolidated Travelers' and Allstate's appeals. Citing the split in the decisional law of the federal district courts — *Scott*, *Sayles,* and *William*s — and of the Pennsylvania state courts — *Fleming*, *Erie,* and *Hoch* — and what it perceived as "the closeness of this unsettled question of state law," as well as the large number of insurance contracts containing similar clauses, *see* Petition for Certification of Question of State Law from the Third Circuit Court of Appeals, 9/13/18, at 8-9, the Third Circuit petitioned our Court for certification of the following question, which we granted:

> Whether, under Pennsylvania law, a contractual provision in a motor vehicle insurance policy that requires an insured to submit to an independent medical examination by a physician selected by the insurer, when and as often as the insurer may reasonably require, as a condition precedent to the payment of first-party medical benefits under that policy, conflicts with the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1796(a), and is therefore void as against public policy.

*Scott v. Travelers Commercial Ins. Co.*, 194 A.3d 1046 (Pa. 2018) (order).

## II. Arguments of the Parties

Because Allstate has been designated the lead Appellant in this matter by our Court, we begin by recounting its arguments. Allstate argues that its IME clause in Sayles'

insurance policy does not conflict with Section 1796(a) of the MVFRL. It notes that Section 1796(a) does not contain the term "insurer," nor does it utilize directive language such as "shall" indicating that insurers are required to obtain a court order each and every time they want their insured to submit to an IME. Allstate argues that these omissions evidence an intent by the legislature not to compel insurers to obtain a court order to have an IME performed on a claimant, which it avers would result in increased costs for insurers, and, thus, thwart a key purpose of the MVFRL, which is to control the cost of automobile insurance premiums.

Allstate asserts that the absence of the term "insurer," as well as the lack of the term "shall" in Section 1796(a), is "telling," given that the MVFRL contains numerous other provisions explicitly referring to the duties of an insurer, and specifying what it "shall" or "must" do. Allstate Brief at 15-17. Allstate contends that, because the legislature was capable of including such mandatory language if it had intended that insurers must always obtain a court order prior to requesting an IME, but did not, we should not read Section 1796(a) in a manner which makes a court order for an IME a compulsory requirement.

Allstate proffers that Section 1796(a), may instead be read in a manner consistent with Pennsylvania public policy, and as merely permitting "an insurer the *option* to obtain a court order requiring an insured to undergo an IME where there is no mechanism in place between the parties." *Id.* at 19 (emphasis original). In other words, where the insurance contract does not set forth any methodology for an insurer to obtain an IME, Section 1796(a) furnishes procedures which an insurer may follow to procure such an examination. Allstate contends that this construction was utilized by the Superior Court in its decision in *Fleming*, and subsequently in *Levine v. Travelers Property Casualty Insurance Company*, 69 A.3d 671, 678 (Pa. Super. 2013) (holding that an IME does not constitute "peer review" within the meaning of Section 1797 of the MVFRL, and noting in

its discussion that "[a]n IME . . . may be performed where the subject voluntarily submits, where an insurance policy so provides, or pursuant to a court order"), as well as by the District Court of the Eastern District of Pennsylvania in *Williams*. Allstate maintains that the inclusion of its IME clause in the automobile policy in question is consistent with this suggested interpretation, inasmuch as the clause provided a mechanism by which it could obtain an IME, and, thus, there was no need to resort to the procedures set forth in Section 1796(a).

Next, Allstate argues that its IME clause does not violate the public policy of the MVFRL because there is no ambiguity in its language, which merely allows it to "reasonably require" its insured claimant to undergo an IME. Allstate Brief at 25. Allstate avers that, in situations such as this, where an unambiguous contractual provision is claimed to violate public policy, the challenger has a high burden to establish such a claim. Allstate contends that, to establish such a violation, the public policy must not be a policy which derives from the court's own views, but, rather, should be evidenced by "'long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards.'" *Id.* at 26 (quoting *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 207 (Pa. 2002)).

Allstate maintains that there is no longstanding government policy requiring court approval of every insurer's request to have an insured claimant submit to an IME, as evidenced by the fact that the General Assembly has taken no action to revise Section 1796(a) in the 27 years since the Superior Court's decision in *Fleming*, and in the 10 years since the District Court decision in *Williams*. In Allstate's view, even if there were such a governmental policy, this policy must be balanced against what it considers the predominant public policy behind enactment of the MVFRL — containment of the cost of insurance policies. Allstate argues that interpreting Section 1796(a) to require a court

order in all instances where an insurer seeks an IME would directly run afoul of the legislative intent to combat rising insurance costs, because insurers would, in essence, be forced to prepare for a "mini-trial" each time they desired to obtain an IME. *Id.* at 32. Allstate reasons that this would result in insurers being forced to expend more financial resources to hire legal counsel, file court documents, and hire medical experts to establish that there is good cause for the IME request, which, in turn, would drive up insurers' expenditures and the overall cost of insurance premiums.

Finally, Allstate claims that its IME clause is consistent with form policy language promulgated by the Pennsylvania Insurance Department ("Insurance Department") governing proof of claims for injuries caused by uninsured motorists. *See* 31 Pa. Code § 63.2, EXHIBIT C(III), "Conditions" ("The injured person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require"). Allstate highlights that the IME clause it uses in its policies is "virtually identical" to the language of Exhibit C, and it argues that the Insurance Department's adoption of this language weighs against a conclusion that its use of identical language is violative of public policy. Allstate Brief at 34.

In conclusion, Allstate asks the Court to answer the certified question in the negative and rule that its IME clause is enforceable and does not conflict with Section 1796(a). In the alternative, Allstate requests that, if the Court answers the question in the affirmative, our decision should be made prospective only, as it represents a new rule of law which insurers had not previously contemplated in including these clauses in their policies based upon their presumed validity in light of *Fleming*, *Levine*, and *Williams*.

Travelers, for its part, argues that the District Court in its case erred in finding that it breached its contractual duty to Scott, given that Scott was bound by the IME clause and failed to respond to its requests that he submit to the medical examination it

scheduled. Travelers rejects Judge Schwab's finding that such a contractual requirement violated Section 1796(a), given that this section states only that a court "may" order a claimant to submit to such an exam, but does not require a court to be involved in this process in every instance. Travelers echoes Allstate's arguments regarding the significance of the use of the term "may" in this section, whereas, in other sections of the MVFRL, the term "shall" is used, and it also endorses Allstate's arguments regarding the significance of the absence of the term "insurer" from this section while appearing in other sections. Travelers agrees that both omissions evidence the legislature's intent not to impose a mandatory duty on insurers to seek court approval each time they wish to conduct an IME. Travelers additionally relies heavily on the reasoning of the *Fleming* and *Williams* decisions. In its view, these decisions established that an insurer's use of an IME clause in contracts of insurance does not run afoul of Section 1796(a).

Travelers aligns with Allstate's public policy arguments, and it also takes the position that this clause does not violate a "dominant public policy" which would justify finding it to be void. Travelers Brief at 35. To the contrary, Travelers suggests that when Section 1796(a) is read in context with the other provisions of the MVFRL, it must be construed to permit the use of this type of IME clause, as that furthers the preeminent public policy behind the MVFRL of cost containment of insurance premiums. Travelers notes that whenever Section 1796(a) is read in conjunction with other provisions of the MVFRL governing first-party benefits, such as Section 1712, allowing an insured to buy higher amounts of coverage for first-party benefits, and Section 1716, requiring insurers to make a reasonable and necessary determination regarding the payment of benefits, it becomes clear that the prompt resolution and payment of first-party claims for medical benefits was a principal concern of the legislature. According to Travelers, requiring court approval of IMEs in every instance would impede this goal.

Further, Travelers highlights the fact that there is nothing in Section 1796(a) which prevents parties from freely contracting for this type of IME clause. In its view, Section 1796(a) applies only in the absence of such a bargained-for contractual provision governing the obtainment of an IME, and, because its IME clause was voluntarily agreed upon by itself and Scott, Section 1796(a) has no application. Travelers points out that our Court in *Lardas v. Underwriters Insurance Company*, 231 A.2d 740 (Pa. 1967), has upheld the inclusion and enforceability of a clause that restricted the time period for filing a suit under the contract to one half the period afforded by the statute of limitations for breach of contract. Travelers reasons that, even though its IME clause may not contain the same requirements as Section 1796(a), it is, nevertheless, still enforceable as a voluntary agreement between Scott and itself.[7]

Appellee Sayles responds by asserting that Section 1796(a) is clear and unambiguous and requires all insurers seeking IMEs of policyholders to undertake three mandatory steps: (1) the insurer must petition a court of competent jurisdiction; (2) demonstrate to that court good cause for requesting the IME; and (3) obtain a court order in which a judge sets the manner, conditions, and scope of the IME, as well as the physician by whom it will be performed. Sayles also claims that the statute's use of the language "any claim for medical benefits," and its failure to provide any exceptions for its application, indicates that the legislature intended it to cover all claims for medical benefits, without exception, and, thus, includes those claims made under policies which contain these type of IME clauses.

---

[7] *Amicus* the Pennsylvania Defense Institute has filed a brief which largely tracks the arguments of the insurers in this case. It also argues that any decision from our Court which holds that Section 1796(a) is the exclusive means by which an insurer can compel an IME of an insured receiving first-party benefits should be applied only prospectively.

Sayles avers that Section 1796(a)'s requirement of a showing of good cause for the IME is intended to protect policyholders from being subjected to "harassment, untoward intrusion, and unwarranted examination" by insurers. Sayles Brief at 6 (quoting *State Farm v. Swantner*, 594 A.2d 316, 322 (Pa. Super. 1991) (*en banc*)). Sayles observes that allowing insurers to bypass Section 1796(a) through the inclusion of these IME clauses in their policies would result in disparate treatment of policyholders throughout the Commonwealth. Those insureds who have policies without the IME clauses would be afforded the full protections of Section 1796(a), under which the insurer would have to present evidence of good cause to a judge to justify obtaining the IME, whereas those insureds with this type of IME clause in their policies could be subject to IMEs at any time the insurer requests them, even if the insurer is requesting them for a wholly self-serving reason, such as the desire to prematurely terminate the payment of medical benefits.

Also, Sayles argues that Section 1796(a)'s requirement of an order from an impartial judge who will choose the physician to perform the exam removes this critical decision from the hands of the insurer, which, by virtue of its experience and resources, can easily choose a medical expert who would render the most favorable opinion to its position. Further, Sayles avers that Section 1796(a) requires that the judge, when ordering an IME, delineate the manner, conditions, and scope of the conduct of the IME; whereas the IME clause at issue here allows the insurer — an interested party — unilateral authority to wholly control all aspects of the IME.

Sayles highlights another significant difference between the legislative framework of Section 1796(a) and these contractual IME clauses — namely, the effect on payment of medical benefits to injured individuals. Under Section 1796(a), an insurer seeking to deny payment of first-party medical benefits is required to petition the court for an order

seeking an IME and, if it obtains that order based on a showing of good cause, only then may it terminate payment of benefits based on either the result of the exam, or a failure of the injured person to comply with the order. By contrast, under the IME clause, the insurer can unilaterally terminate benefits by demanding an IME at a time and place of the insurer's choosing, and then abruptly cease the payment of benefits if the injured person cannot comply with its demand.

Sayles further argues that application of the principles of the Statutory Construction Act ("SCA"), 1 Pa.C.S. §§ 1501-1991, supports this construction. Sayles avers that the language of Section 1796(a) is clear and unambiguous in specifying that it applies "[w]henever the mental or physical condition of a person is material to any claim for medical benefits." Sayles Brief at 13 (quoting 75 Pa.C.S. § 1796(a)). Sayles emphasizes that the use of the term "any claim" was meant to apply the requirements of Section 1796(a) to every claim for medical benefits under an insurance policy, without exception.

Sayles repudiates Allstate's argument that the absence of the words "insurer" and "shall" from Section 1796(a) somehow empowers insurers to disregard this statutory mandate, as it is apparent that this statute, like other provisions of the MVFRL which do not specifically use the terms "insurer" or "shall," but, nonetheless spell out the responsibilities of an automobile insurer towards its policyholders in certain circumstances, was intended to regulate the conduct of an insurer seeking an IME in response to a claim for medical expenses by its insured. For example, Sayles highlights 75 Pa.C.S. § 1720, which employs similar language to Section 1796(a), and likewise does not mention the term "insurers," but is nevertheless plainly applicable to insurers in that it governs their relationships with policyholders. Similarly, Sayles argues that the MVFRL, as a whole, is also intended to govern the relationship between insurers and policyholders with respect to the payment of medical benefits, and, thus, it logically follows that Section

1796(a) applies to all insurers. Sayles posits that a determination to the contrary would render this provision null, and not applicable or enforceable with respect to any insurer.

Sayles, likewise, asserts that the use of the word "may" does not render the statute "permissive," because the word "may" applies only to the court's ability to determine whether or not it should order an exam based on the petitioner's showing of "good cause." The use of the word "may," Sayles argues, does not grant insurers the right to selectively comply with the provision; rather, the use of the term "may" in this context "simply means that a court may order the exam if the proper showing of good cause is made or a court 'may not' order an insured to submit to an examination if the requisite showing of good cause is not made." Sayles Brief at 17. In Sayles' view, an insurer has only two options under the MVFRL when faced with a claim for expenses related to medical care: (1) pay the insured's benefits pursuant to 75 Pa.C.S. § 1716; or (2) submit a petition to a court under Section 1796(a) seeking an order requiring the insured to submit to an IME.

Sayles rejects Allstate's contention that it may, by contract, set conditions for conducting an IME different from those enumerated in Section 1796(a). Sayles avers that traditional approaches to interpreting contracts between parties have limited applicability here given that customers who purchase insurance and the companies from which they purchase it do not stand on equal footing and do not freely bargain over provisions in insurance contracts as parties to traditional commercial contracts might. Sayles asserts that the statutory language must prevail over the contract language, and that, because the IME clause in Allstate's policy patently conflicts with the language of Section 1796(a), this Court should declare the clause void as against public policy, consistent with our prior decisions in *Generette v. Donegal Mutual Insurance Company,* 957 A.2d 1180, 1191 (Pa. 2008) (holding that "statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid,

since contracts cannot change existing statutory laws"), and *Prudential Property and Casualty Insurance Company v. Colbert*, 813 A.2d 747, 750 (Pa. 2002) (same). Here, Sayles maintains that the IME policy provisions conflict with the statutory language of Section 1796(a) in the following specific ways: (1) Section 1796(a) requires the insurer to file a petition with a court, whereas the IME provision of the policy requires no such petition be filed; (2) Section 1796(a) requires a judge to adjudicate the petition, but the IME provision contains no such requirement; (3) Section 1796(a) requires the judge to select the physician to conduct the examination, but the IME provision leaves the selection of the examiner wholly within the insurer's discretion; (4) Section 1796(a) specifies that the judge set the manner, conditions, and scope of the IME; however, the IME provision allows the insurer to unilaterally establish these parameters. These conflicts, Sayles notes, inure to the benefit of the insurer in a manner contrary to the plain language of Section 1796(a), and, like the policy provisions at issue in *Generette* and *Colbert*, they should be found by our Court to be void against public policy.

Along these lines, Sayles highlights that the legislative purpose of the MVFRL is not just to contain insurance costs as the insurers argue; rather, equally important is the goal of securing access to medical care for insureds in a "fair and independent manner," which Section 1796(a) advances. Sayles Brief at 20. Sayles asserts that permitting IME clauses in individual insurance policies to override Section 1796(a) would improperly shift the ultimate burden from the insurer to obtain an order for an IME from a judge, upon a showing of "good cause," to the insured to challenge the IME request in court and prove that the insurer's request for one was not based on "reasonableness." *Id.* at 22.

Turning to an analysis of the decisions of the Pennsylvania Superior Court and the District Court for the Eastern District of Pennsylvania, which Allstate claims support its suggested interpretation, Sayles avers that *Fleming*, *Williams*, and *Levine* are inapposite,

as they are not binding authority upon this Court, and, thus, do not control the disposition of the instant issue. Specifically, Sayles notes, the *Fleming* court acknowledged that it was not reviewing a challenge to the IME clause at issue therein as void against public policy; hence, it did not decide that issue. Additionally, Sayles explains that the insurance company in *Fleming* filed a petition seeking a court order to compel its insured to undergo an IME, unlike Allstate here. Sayles reasons that, because *Williams* was entirely predicated on the decision in *Fleming*, which did not decide this issue, *Williams* likewise provides no basis to uphold the validity of these clauses. Sayles also contends that *Levine* did not concern the issue presented here, and, instead, considered whether an award of attorneys' fees was appropriate. By contrast, Sayles asserts that Judge Wettick's opinions in *Erie* and *Hoch* are dispositive, and both require that an insurer seek a court order to obtain an IME.

Lastly, Sayles claims that Allstate's reliance on 31 Pa. Code § 63.2 is misplaced, and that, in any event, Allstate waived this argument, as it never presented it in any prior proceeding. Moreover, Sayles notes that this Code provision merely relates to uninsured motorist coverage, and, thus, has no bearing on this matter, nor is there anything of record to suggest that Allstate requested that the Insurance Department approve this particular policy provision. In sum, Sayles requests that the certified question be answered in the affirmative and that the ensuing decision be retroactively applied.

Appellee Scott argues that, contrary to Travelers' assertion, insurance contracts are not freely negotiated between parties, and, instead, are often "adhesive in nature," that is, they furnish a necessary service and are offered to consumers on a "take it or leave it basis." Scott Brief at 11. In this regard, Scott contends that consumers are required by law to have automobile insurance coverage, and, accordingly, they must purchase policies drafted by the insurance companies which contain terms and conditions

that consumers cannot change or alter through bargaining. Consequently, he avers that insureds such as himself are in a weaker position contractually and cannot simply demand different terms, which is why the legal protections of a statute such as the MVFRL are essential to protecting consumers' rights.

Aligning with Sayles' argument, Scott asserts that the language of Section 1796(a) is clear and unambiguous in requiring an insurer seeking to procure an IME of an insured to petition a court, demonstrate that the mental or physical condition of the insured is material to the claim, and demonstrate good cause for the request for the IME. It, therefore, according to Scott, does not permit Travelers to use this IME clause to circumvent these requirements and unilaterally deny him the first-party medical benefits he is entitled to under the MVFRL. Scott, like Sayles, also contends that Section 1796(a) is applicable in each and every case where the insured does not voluntarily submit to a requested IME, and that a contractual clause in an insurance contract cannot override these explicit statutory requirements.

Scott also rebuffs the insurers' claim that following the statutory mandates of Section 1796(a) will thwart a policy objective of the MVFRL to hold down the costs of insurance policies. Scott points out that insurers are in control of the costs associated with compliance with Section 1796(a), and, if they desire to limit these costs, need only refrain from attempting to compel an IME without good cause to do so. Moreover, Scott argues, the insurers ignore the fact that most often insureds will voluntarily comply with a request for an IME, particularly if they are represented by counsel in a personal injury suit. Scott suggests that the true danger of these provisions stems from the fact that they shift the legal costs associated with the procurement of an IME from the insurer to the insured, as Section 1796(a) places the burden on the insurer to seek court approval for

the conduct of an IME, whereas these IME clauses shift the burden to the insured to initiate a court challenge to the requested IME.[8]

### III. Analysis

We begin by observing that, as a general matter, a challenger who asserts that clear and unambiguous contract provisions, such as the ones at issue in this case, are void as against public policy carries a heavy burden of proof. *Generette*, 957 A.2d at 1190. This is because public policy "is more than a vague goal which may be used to circumvent the plain meaning of the contract." *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1008 (Pa. 1998). Nevertheless, "[w]hile we are wary to declare contractual language invalid as against public policy, we are obliged to find contractual language to be contrary to public policy when it violates statutory language." *Generette*, 957 A.2d at 1190-91. Thus, "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws." *Id.* (quoting *Prudential Property*, 813 A.2d at 750).

---

[8] The Pennsylvania Association for Justice ("PAJ") has filed an *amicus* brief which outlines the process for claiming first-party benefits under the MVFRL, emphasizing that the provisions of this statute were intended by the legislature to operate together in a cohesive manner to regulate the relationship between the insured and the insurer, and, thus, none of the provisions of the MVFRL, including Section 1796(a), may be ignored. PAJ also notes that several Justices of this Court have opined that the MVFRL's goal of cost containment can, in certain instances, yield to countervailing remedial objectives and the coverage rights of insureds. Moreover, PAJ explains that Section 1796(a) was enacted to prevent insurers from summarily denying claims for first-party benefits, and, just as parties to an insurance contract may not bargain away other explicit protections of the MVFRL, such as the mandatory minimum of $5,000 in medical benefits, they may not bargain away the protection offered by Section 1796(a). Finally, PAJ asserts that the Court is not being asked to create a new rule of law in this matter; thus, whatever decision we reach here should be retroactively applied back to the date of Section 1796(a)'s enactment.

We must therefore determine whether the IME clauses at issue in this matter conflict with the enumerated requirements of Section 1796(a), and, as a result, are void against public policy, as Appellees claim. To reiterate, Section 1796(a) provides:

> **§ 1796. Mental or physical examination of person**
> **(a) General rule.--**Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa.C.S. § 1796(a).

In analyzing Section 1796(a), we are guided by the principles set forth in the Statutory Construction Act. Dominant among these principles is that a statute must be interpreted in a manner which will effectuate the intent of the legislature. 1 Pa.C.S. § 1921(a). Further, we are required to interpret a statute in a manner which gives effect to all of its provisions. *Id.* If the language of a statute is "clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). Consequently, "when the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent." *Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1071 (Pa. 2018).

Additionally, the SCA sets forth presumptions applicable to the interpretation and construction of all statutes which are aids in determining legislative intent, two of which are applicable to this matter: First, "the General Assembly does not intend a result that

is absurd, impossible of execution or unreasonable;" and, second, "the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(1), (2).

We first reject Appellants' argument that Section 1796(a) imposes no mandatory duty on them as insurers with respect to how they may compel a policyholder who has filed a claim for first-party benefits to submit to an IME after the policyholder has refused the insurer's request to voluntarily do so, merely because it does not utilize the terms "insurer," or "shall." As the learned Judge Wettick has correctly discerned, "[t]he [MVFRL] is comprehensive legislation governing the rights and obligations of the insurance company and the insured under liability insurance policies covering motor vehicles." *Erie*, 39 Pa. D. & C. 3d at 36. Thus, the provisions of the MVFRL pertaining to the required scope of coverage and content of automobile insurance policies, and benefits payable thereunder, impose mandatory obligations applicable to all automobile insurance providers in this Commonwealth, whether or not those provisions explicitly use the term "insurer," or the directive "shall."

Under Section 1711 of the MVFRL, all insurers issuing liability insurance policies for motor vehicles are required to provide a minimum medical benefit of $5,000. 75 Pa.C.S. § 1711. An insurer who seeks to determine whether a claim for such medical benefits by its insured is necessary, and whether it is obliged to pay for such treatment, utilizes an IME to make this assessment. A plain reading of Section 1796(a) indicates that it was intended to set the irreducible requirements all insurers issuing policies of automobile insurance in this Commonwealth must meet in order to compel their insured to submit to an IME when the insured does not voluntarily comply with the insurer's request to do so. *See* 75 Pa.C.S. § 1796(a) (section applies "[w]henever the mental or physical condition of a person is material to *any* claim for medical . . . benefits") (emphasis added); *see also Swantner*, 594 A.2d at 321-22 (holding that the "for good cause shown"

standard of Section 1796(a) is determinative of "the continued necessity for treatment and requirement of payment" of a claim for first-party medical benefits, and it is intended to "prevent harassment, untoward intrusion and unwarranted examination when the proof presented does not meet the standard universally applied when good cause is implicated").[9] Thus, insurers are required to follow Section 1796(a) when seeking to compel an insured to submit to an IME, when the insured has refused to voluntarily comply with such a request, and any insurance policy which purports to set requirements by which an insurer may compel an insured to undergo an IME is required to comport with that section.

Accepting Appellants' argument that this section applies only when insurance policies do not contain IME clauses such as those implicated herein would lead to an unreasonable and, indeed, absurd result. As other courts have recognized, the General Assembly in enacting Section 1796(a) carefully crafted a judicially-supervised procedure which balances the right of the insurer to obtain needed information for the payment of first-party medical claims with the right of the insured not to be subject to unwarranted intrusions on his or her privacy by being subject to repeated and unnecessary medical examinations in order to obtain first-party benefits. *Swantner*, *supra*; *see also Erie*, 39 Pa. D. & C. 3d at 37 ("[T]hrough section 1796(a), the Legislature has balanced the interests of the insurance company in obtaining more complete information in support of a claim through a physical examination by a physician selected by the insurance company

---

[9] Because Section 1796(a), by its terms, applies any time an insured has made a claim for first party benefits, and an insurer seeks to compel an insured to submit to an IME after the insured has refused a request to voluntarily do so, its application does not depend on the existence of a pre-existing court proceeding between the insurer and insured. Pa. R.C.P. 4010, which would also apply if there is a pending court action between the insured and the insurer, permits an involuntary physical or mental examination of "a party, or of a person in the custody or under the legal control of a party," and, as with Section 1796(a), only pursuant to a court order issued upon a showing of good cause. Pa.R.C.P. 4010(a)(2), (3).

and the interests of the insured in having claims paid without being subjected to the inconvenience and invasion of privacy that such an examination imposes, by providing for an examination pursuant to a court order obtained by the insurance company based upon good cause shown."). Allowing such a contractual circumvention of Section 1796(a) would create a bifurcated scheme of automobile insurance coverage whereby some insureds who have such clauses in their policies would be subject to IMEs at the unilateral direction of the insurer, whereas others whose policies do not have these clauses would be entitled to the protections of Section 1796(a).[10] This would undermine one of the legislature's remedial objectives undergirding the MVFRL, which is to provide a comprehensive and uniform statutory framework which ensures that victims of accidents are adequately compensated for a harm they suffer while traveling on Pennsylvania highways.[11] *Lewis v. Erie Ins.*, 793 A.2d 143, 152 (Pa. 2002); *Allwein v. Donegal Mut. Ins. Co.*, 671 A.2d 744, 751 (Pa. Super. 1996). Moreover, accepting Appellants' argument that the legislature's deliberate statutory design can be bypassed simply by the

---

[10] The case of *Lardas, supra,* cited by Travelers, does not support Appellants' argument that Section 1796(a) was intended to apply only in situations where parties have not, by contract, established procedures for the insurer to compel its insured to submit to an IME. In that case, the parties contractually agreed to a statute of limitations for actions arising under their contract which was shorter than that provided by the Judicial Code — one year as opposed to four years. However, the statute itself, 42 Pa.C.S. § 5501(a), *expressly permitted* the parties to voluntarily shorten the statutory period by written agreement. There is no such provision of the MVFRL which permits parties to waive or alter the statutory requirements of Section 1796(a).

[11] In this regard, we accept as well-founded Appellee Scott's argument that in a large number of cases an insured will voluntarily comply with an insurer's request for an IME, particularly if the insured is represented by counsel and has commenced a personal injury action. To Appellants' contention that enforcing the legislative mandate embodied in Section 1796(a) would somehow result in courts being flooded with motions to compel IMEs under this section, and drive up the overall price of automobile insurance, we note that this statutory provision has been in existence for 35 years, but no such flood of motions has ensued during that time period, and the General Assembly presumably considered any potential impact this provision would have on the cost of automobile insurance when enacting it.

insertion of clauses like these in automobile insurance contracts would contravene the well-established tenet of our jurisprudence that "contracts cannot change existing statutory laws." *Generette*, 957 A.2d at 1191.

Having concluded that Section 1796(a) imposes mandatory obligations on insurers, we turn to a comparison of the IME provisions contained in Appellants' policies and the requirements of Section 1796(a); a plain reading of both indicates that they are in irreconcilable conflict. First, Section 1796(a) requires an insurer who wishes to compel a claimant for first-party medical benefits to undergo an IME to file a petition with a court of competent jurisdiction, and, also, to show good cause for the IME. In addition, any court order for an IME must give the insured "adequate notice of the time and date of the examination," as well as "state the manner, conditions and scope of the examination." 75 Pa.C.S. § 1796(a). By contrast, the IME provisions of the policies at issue do not require an insurer to file such a petition, or to establish good cause; rather, the policies allow the insurer to unilaterally, and at any time, require that the insured make himself or herself available for an IME at a time and place of the insurer's choosing. Therefore, under the terms of the IME provisions of the relevant policies, the insured receives no suitable advance notice of the request for an IME, the reasons for which it is being requested, information about how the examination will be conducted, nor, critically, does the insured have the opportunity to challenge the request before a neutral judicial decision-maker on the grounds that it lacks good cause.[12]

---

[12] It is theoretically possible that an insured could challenge an insurer's directive made under Appellants' policies for an insured to undergo an IME by commencing a court action, and then attempt to show that the request is not "reasonably required," which is the standard the insurers have chosen in the IME clauses as justification for requesting an IME; however, such a process would require the insured to initiate legal proceedings, and, critically, it wholly shifts the cost and burden of proof to the insured to show that the IME is not warranted, rather than requiring the insurer to show good cause for it, which is in conflict with Section 1796(a).

Second, Section 1796(a) requires a judge to adjudicate the petition; however, the IME policy provisions contain no such requirement, and it is the insurer alone which decides when such a request is justified, and if the insured has adequately complied.

Third, under Section 1796(a), if the judge does grant an insurer's request for the IME, the judge selects the physician who will perform the IME, and, importantly, sets the manner, conditions, and scope of the examination. However, the IME policy provisions allow the insurer to unilaterally select the physicians who will perform the IME, and, of great significance, set no limits on the scope or conduct of the IME, a process, as we have emphasized above, which impacts insureds' significant privacy interests.

Fourth, the IME policy provisions allow the insurer to determine whether, as a result of the insured's alleged noncompliance with the conditions the insurer places on the conduct of the IME, the insured's benefits should be terminated, as they were in the cases before us. By contrast, Section 1796(a) vests this authority solely with the judge who orders the IME.

Finally, we must reject Allstate's contention that, because the Insurance Department has, by regulation, promulgated sample language for insurance policies governing medical claims for injuries caused by uninsured motorists which mirrors the language of the clauses at issue, *see* 31 Pa.Code § 63.2, this constitutes approval of the use of such policy language. Our Court has made clear that the Insurance Department cannot, by regulation, legally approve an insurer's use of policy language which conflicts with the express requirements of the MVFRL as enacted by the General Assembly. *See Ins. Fed'n of Pa. v. Pa. Dep't of Ins.*, 889 A.2d 550 (Pa. 2005) (holding that the Insurance Department did not have legal authority to enact a regulation which mandated that all insurance coverage disputes involving uninsured or underinsured motorist coverage be

subject to binding arbitration, inasmuch as neither the MVFRL nor the Uninsured Motorist Act allowed imposition of such a requirement).

In sum, then, these IME policy provisions manifestly conflict with, and are repugnant to, the statutory protections for individuals insured under automobile insurance policies regarding the conduct of IMEs as established by the General Assembly in Section 1796(a); consequently, they are void as against the public policy of this Commonwealth. We therefore answer the certified question from the Third Circuit in the affirmative.[13]

The matter is returned to the United States Court of Appeals for the Third Circuit.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty and Mundy join the opinion.

Justice Baer files a concurring opinion.

Justice Wecht files a dissenting opinion.

---

[13] We decline the parties' request that we declare that this decision be applied either prospectively or retroactively, as such a consideration is beyond the narrow scope of our present mandate, which is merely to answer a certified question from a federal court of appeals.